No. 101,653

STATE OF KANSAS, *Appellee,* v. RAYMORE RAPHAEL LEVY, *Appellant.*

(253 P.3d 341)

Opinion filed June 24, 2011.

*Gerald E. Wells*, of Lawrence, argued the cause and was on the brief for appellant.

*Jason E. Geier*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Raymore R. Levy appeals his convictions for rape of a child under 14 years of age, aggravated criminal sodomy of a child under 14 years of age, and aggravated indecent liberties with a child. Levy received three life imprisonment sentences under Jessica's Law, K.S.A. 21-4643. The third sentence runs concurrent with the first two, effectively imposing two life terms.

On appeal, Levy makes three arguments: (1) his sentence is disproportionate in violation of the Eighth Amendment right against

cruel and unusual punishment; (2) his Sixth Amendment right to confrontation was violated after a recorded "Safetalk" video interview was shown at his preliminary hearing when the child victim was not there to be cross-examined; and (3) both his trial counsel were ineffective, depriving him of a fair trial.

We affirm. We find the first two issues were not properly preserved for appeal. We decline to decide the third issue because it was raised for the first time on appeal. See *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009) (As a general rule, an ineffective assistance of counsel claim will not be considered for the first time on direct appeal.).

### FACTUAL AND PROCEDURAL BACKGROUND

It is unnecessary to relate the details of the crimes charged against Levy in light of our finding that none of the issues raised were preserved for review. The following facts are sufficient to understand the arguments made.

Levy's girlfriend's 7-year-old daughter disclosed to school officials that Levy was sexually abusing her. The victim described the abuse in detail in a recorded Safetalk interview with a social worker. The victim was given a medical examination the same day she alleged an incident of abuse had occurred. Levy's semen was found on the inside of the victim's underwear, but not on the swabs used on the victim during the medical exam. In a three-count complaint, Levy was charged with rape of a child, aggravated criminal sodomy of a child, and aggravated indecent liberties/lewd fondling with a child. All three counts alleged the victim was under 14 years of age, and Levy was over 18 years of age, triggering an enhanced sentence under Jessica's Law.

At Levy's preliminary hearing, the victim did not testify. Instead, the State sought to admit her recorded Safetalk interview with the social worker. Levy's attorney questioned the recording's chain of custody but made no objection. The video was then played for the court. Notably for this appeal, Levy's counsel did not raise a Confrontation Clause issue during this proceeding.

The interviewing social worker testified at the preliminary hearing about her initial interactions with the victim. She testified the

victim at first said her "dad" had been hurting her "down there" and that this led to some early confusion about whether the victim was referring to Levy or her biological father. But the social worker explained further that this uncertainty resolved itself when the victim made it clear Levy was the abuser. On cross-examination, defense counsel asked who reported the name of the biological father as an alleged perpetrator. The social worker said she would not answer unless the court ordered her to do so. Defense counsel did not ask the court to order a response. When the hearing concluded, Levy was bound over for trial.

After the preliminary hearing, and at his request, Levy was appointed new trial counsel who moved for a second preliminary hearing, claiming Levy was denied the right to confront the victim at the earlier proceeding. The district court denied the motion.

At trial, a KBI forensic biologist testified about evidence gathered and tested from the victim's body and clothing, which established that the semen found on the victim's underwear was consistent with Levy's DNA. These findings were compiled into a report the State sought to admit. Levy's trial counsel did not object to the DNA report's admission but later made multiple objections for chain of custody reasons, none of which were sustained.

The victim testified at trial as part of the State's case against Levy. The trial transcript shows she was a reluctant witness at times, although she acknowledged that she must answer questions from the lawyers and tell the truth. The prosecutor initially had difficulty getting the victim to describe what had happened to her. She repeatedly asked not to be questioned about the allegations against Levy. At one point during her direct examination, a recess was called so the victim could compose herself when she started crying. Eventually, she identified Levy as the person who sexually abused her and described the abuse. She also described the Safetalk interview, the medical examination conducted on her at the hospital, and her conversation with police.

On cross-examination, defense counsel inquired further about the Safetalk interview and the victim's initial report of the sexual abuse. The victim acknowledged she had confirmed to her teacher that "her mom's boyfriend" had hurt her. Counsel also had the

victim agree that she had told the truth in her interviews about the allegations. At the end of cross-examination, Levy's trial counsel stated simply, "I don't have any additional questions." Defense counsel lodged no objection or complaint that his cross-examination was incomplete or otherwise thwarted by any reluctance, nervousness, or hesitation by the victim.

The State offered into evidence the recorded Safetalk interview during the social worker's trial testimony. In response, Levy's attorney only said, "I haven't seen that physical one, but I'm sure it's the same of [*sic*] the original, and same ones provided to us. Assuming that's correct, we have no objection." The court then admitted the recorded interview into evidence and played it for the jury.

At the close of evidence and before the case was submitted to the jury, Levy's trial counsel moved for judgment of acquittal. The argument, in part, related to the Safetalk video but was not made in a Confrontation Clause context. Rather, defense counsel contrasted the facts provided in the more detailed recorded interview with the evidence presented at trial. In essence, the video was used as an illustration for Levy's claim of insufficient evidence to support the charges against him. The district court overruled the motion. The jury found Levy guilty on all counts.

Before sentencing, Levy's counsel filed another motion for acquittal and, in the alternative, moved for a new trial. In both motions, Levy's attorney made a Confrontation Clause argument for the first time relating to the Safetalk video. The claim was that because the victim was not subject to cross-examination at the preliminary hearing and then at trial was a reluctant witness who gave limited testimony, the jury convicted Levy based on the recorded interview alone. Levy argued this was in violation of his due process rights and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (accused has right to confront and cross-examine witnesses testifying against them). The State replied there was no Confrontation Clause violation because Levy had the opportunity to cross-examine the victim at trial. The court denied Levy's argument and motion for new trial.

In preparation for sentencing, Levy filed a motion for downward departure in which he argued the minimum mandatory statutory sentences for his convictions would be "excessive" because he had no prior criminal history related to child abuse or sexual crimes and was only 20 years old at the time of the crimes. Levy's counsel also argued orally at the sentencing hearing that the sentence would be "excessive." The State objected.

The court denied Levy's downward departure motion and sentenced him to life in prison with a mandatory minimum of 25 years on count 1 (rape), with no good-time credit, lifetime electronic monitoring, and lifetime postrelease supervision; life in prison with a mandatory minimum of 25 years on count 2 (aggravated criminal sodomy), with no good-time credit, lifetime electronic monitoring, and lifetime postrelease supervision, to run consecutive to count 1; and life in prison with a mandatory minimum of 25 years on count 3 (aggravated indecent liberties), to run concurrent with counts 1 and 2.

## ANALYSIS

### Issue One: Cruel and Unusual Punishment

Levy argues his life sentence with a mandatory minimum of 25 years ordered pursuant to Jessica's Law violates the Eighth Amendment's prohibition against cruel and unusual punishment. But the substance of Levy's argument may not be analyzed without first determining whether the issue is properly preserved. Generally, claims of constitutional error cannot be raised for the first time on appeal, but there are some recognized exceptions. See *State v. Ortega-Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008). Levy argues the issue was preserved, instead of invoking an exception.

Levy concedes, and the sentencing hearing record reflects, that no specific objection was made to the district court about Levy's sentence being cruel and unusual. But Levy argues his counsel's characterization of the sentence as "excessive" in the written departure motion and repeated orally at sentencing properly preserved the issue for appeal. Specifically, in his departure motion, Levy's counsel stated: "The defendant is now 21 years of age and was only 20 at the time of the alleged offense. A minimum term

of imprisonment of not less than 25 years is excessive on the facts of this case and circumstances in the instant case." And prior to the district court handing down Levy's sentence, while arguing for the downward departure, defense counsel said, "The defendant, at the time this offense was committed, was twenty years old; was an adult by two years. And a term of twenty-five years, given this defendant and these facts, we think is excessive in this case."

Levy acknowledges he did not use the phrase "cruel and unusual punishment" or "violation of the Eighth Amendment," but urges this court to find that an inquiry into this issue should have been made nevertheless. But the test is not simply whether certain catch phrases were used in making an argument about cruel and unusual punishment. See *State v. Mondragon,* 289 Kan. 1158, 1164, 220 P.3d 369 (2009) ("Because there was no effort before the district court to present the issue of whether a Jessica's Law sentence is cruel or unusual, the issue cannot be raised for the first time on appeal.").

In *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978), this court listed three relevant factors in determining whether a sentence violates the constitutional prohibition against cruel and unusual punishment. They are:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishment imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

*Freeman* did not require that the defendant address these three factors first with the district court, but more recent decisions from this court do. For example, in *State v. Garza,* 290 Kan. 1021, 1032-34, 236 P.3d 501 (2010), we rejected the defendant's argument for cruel and unusual punishment because it was not preserved. In *Garza,* the defendant argued he advanced the issue when he stated

in his departure motion at the trial level only that the statutory minimum sentence would " 'amount to cruel and unusual punishment.' " 290 Kan. at 1032. We held the issue was not preserved. 290 Kan. at 1034 (citing *State v. Morningstar*, 289 Kan. 488, Syl. ¶ 4, 213 P.3d 1045 [2009]). Previous decisions by this court similarly barred a defendant's cruel and unusual punishment argument for lacking preservation. See *State v. Trevino*, 290 Kan. 317, 320-22, 227 P.3d 951 (2010); *Mondragon*, 289 Kan. at 1164; *State v. Easterling*, 289 Kan. 470, 485-87, 213 P.3d 418 (2009); *State v. Spotts*, 288 Kan. 650, 652-54, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, 160-61, 199 P.3d 1265 (2009); *Ortega-Cadelan*, 287 Kan. at 159-61.

To date, we have held this issue was preserved in only one appeal, and Levy's trial objections fall far short of the Eighth Amendment objection raised in that case. See *State v. Seward*, 289 Kan. 715, 718-21, 217 P.3d 443 (2009). In *Seward*, the defendant actually launched a federal and state constitutional challenge during plea negotiations with the State, included the claim in his written downward departure motion, and restated it at his sentencing hearing. But even in that case, we remanded the issue to the district court to make the required factual and legal findings articulated by *Freeman*, rather than take it up for the first time on appeal, adding:

"We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." 289 Kan. at 721.

See Supreme Court Rule 165 (2010 Kan. Ct. R. Annot. 242).

At oral argument in this appeal, Levy's counsel acknowledged the effort now to raise this issue was "pushing the envelope." The litany of cases holding that this issue should be developed first at the district court level underscore this requirement. Accordingly, we hold that Levy's argument was not preserved.

*Issue Two: Confrontation Clause*

Levy next challenges the district court's admission into evidence of the recorded Safetalk interview at his preliminary hearing because the victim, who was the subject of the recording, was not called to testify. Levy argues admitting the interview into evidence under these circumstances violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. He also contends as a separate matter that it was error to admit the Safetalk interview into evidence at trial because the victim's testimony was incomplete and evasive, effectively denying him his right to confront his accuser. In addition, Levy asserts K.S.A. 22-2902(3), which permits a sexual abuse victim to be absent from a preliminary hearing if under 13 years of age, is unconstitutional under the Confrontation Clause.

As with the previous issue, we must first determine whether Levy preserved his Confrontation Clause objections during the district court proceedings. In *State v. Dukes*, 290 Kan. 485, 231 P.3d 558 (2010), the defendant raised a Confrontation Clause issue for the first time on appeal in a driving under the influence case, arguing his rights were violated with the admission of the State's breathalyzer certification documents without giving him an opportunity to cross-examine the technician who actually prepared the documents. We held the issue was not preserved because the defendant did not object to the evidence's introduction at trial. 290 Kan. at 489. In so holding, we emphasized that a defendant must make a specific and timely objection to allow the trial court an opportunity to rule on the issue, even when the issue raised involves a fundamental right. See K.S.A. 60-404; *Dukes*, 290 Kan. at 489. We noted K.S.A. 60-404 dictates that a party may not present an evidentiary issue on appeal when no contemporaneous objection is made and the trial court did not have an opportunity to rule. 290 Kan. at 488.

Considering first Levy's challenge to the district court's admission of the Safetalk interview at his preliminary hearing, we note the following exchange took place between the court, the prosecuting attorney (State), and the defense attorney (Defense):

"Q. Ms. [witness], showing you what's been marked as State's exhibit No. 1. Does that compact disk or DVD, does that contain a recording of the interview as you conducted it on 12-21?

"A. Yes, it does.

"Q. And is that recording a fair and accurate recording of the interview as you conducted it that day?

"A. Yes, it is.

"[State]: Your Honor, State would move for admission of State's Exhibit No. 1.

"THE COURT: All right, any objection?

"[Defense]: Judge, if I could inquire?

"THE COURT: Go ahead.

"[Defense]: Ms. [witness], did you actually handle the recording of the interview?

"A. I was not the one running the equipment. I was the one conducting the interview."

Defense counsel then proceeded to inquire about the number of copies made of the recording, whether the witness reviewed the recording, whether the witness had her copy with her in court, whether it was the same version as the one the State had, and then concluded with:

"[Defense]: I have nothing further.

"THE COURT: Okay, I will admit it.

"[State]: Thank you, Your Honor. And, Your Honor, at this time I request that— to publish State's Exhibit 1.

"THE COURT: Okay."

The video was then played for the court. When the State presented all its evidence, the court asked the parties if either wished to make any closing statements. Defense counsel replied simply, "Judge, we would submit," and did not make a closing statement or raise any objection. Clearly, no challenge was made at the preliminary hearing to admission of the recording or the victim's absence from the proceedings.

Similarly, at trial no objection was made when the Safetalk recording was offered into evidence and played for the jury. Levy's trial counsel noted only that he was assuming the recording offered was the same as the original and the one provided to the defense in advance of trial. Defense counsel then stated, "Assuming that is correct, we have no objection." No mention was made of any in-

ability to more thoroughly cross-examine the victim, who testified prior to the State offering the recording into evidence.

Under these circumstances, we hold that Levy failed to comply with K.S.A. 60-404 to preserve for appeal an attack on the district court's admission at the preliminary hearing and trial of the Safetalk video recording, as well as an attack on the constitutionality of K.S.A. 22-2902(3). *Dukes* resolves these questions. See 290 Kan. at 487-90.

*Issue Three: Ineffective Assistance of Counsel*

Finally, Levy raises two instances in which he contends his attorneys were deficient in the proceedings before the district court. First, from the preliminary hearing, he argues his attorney should have asked the district court to order the testifying social worker to disclose more information about the person Levy now characterizes as an alternate suspect—the person also referred to by the victim as her "dad" during the interview. Second, during trial, Levy argues his attorney should have objected to admission of the exhibit containing both the lab report on the swabs taken during the victim's hospital examination and her underwear. Levy argues the exhibit was inadmissible due to chain of custody problems. As an alternative argument, Levy contends we should remand the case to the district court to order a hearing on his ineffective assistance of counsel claims in order to develop more facts. See *State v. Van Cleave*, 239 Kan. 117, Syl. ¶ 2, 716 P.2d 580 (1986).

The State counters that this argument should not be considered for the first time on appeal and should be brought in a collateral proceeding rather than on direct appeal. The State also argues there is no basis to find Levy's counsel was ineffective. Again, before we can examine the merits, we must determine whether the issue was preserved.

Levy did not raise an ineffective assistance of counsel claim below through a K.S.A. 60-1507 motion or otherwise. As a general rule, such claims will not be considered for the first time on direct appeal. *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009). In *Rowland*, we explained the rationale for this limitation is a recognition that the trial court is best equipped to deal with

the analysis required for such claims because it observed counsel's performance and competence first-hand and can apply that knowledge to the facts. 289 Kan. at 1084. Often, the pertinent questions are subject to conflicting testimony and evidence regarding counsel's actions or inactions, the significance to be given to them, and the strength or weakness of a particular argument. It is rare when the acts of counsel are not in dispute and so clearly reflected in the record that remand would serve no real purpose. *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000).

In *Van Cleave*, we set guidelines for an appellate court to follow in exercising its discretion when deciding whether to remand a case for an evidentiary hearing. See 239 Kan. at 119-21. In that case, we noted an appellant's counsel must do more than simply read the cold record of the proceedings before the district court and then argue that he or she would have handled the case differently. We held that counsel must attempt to determine the circumstances under which trial counsel did—or did not—proceed as the appellate counsel believes preferable and conduct at least some investigation into the claimed ineffectiveness. We then noted: "Except in the most unusual cases, [for an appellate counsel] to assert a claim of ineffective assistance of counsel without an independent inquiry and investigation apart from reading the record is questionable to say the least." 239 Kan. at 120-21.

Levy's claims fall quickly to these principles. He did not raise his ineffective assistance of counsel claims to the trial court. The general rule recited in *Rowland* is applicable. And in reviewing the factual basis for his claims now, we do not find them to be so clearly reflected in the record or indisputable that we can decide them simply on the record provided to us. Finally, we see no indication appellate counsel conducted any investigation to determine whether grounds for these claims exist. Accordingly, we hold that Levy's claims for ineffective assistance of counsel may not be considered for the first time on appeal. In addition, we hold he has failed to meet the minimal requirements established by *Van Cleave* to remand this issue to the district court.

Affirmed.